UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALEXIS KARLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-30058-MGM |
| | ) | |
| SOUTHWEST CREDIT SYSTEMS, | ) | |
| NORTHEAST UTILITIES SERVICE CO., | ) | |
| DECA FINANCIAL SERVICES, LLC, | ) | |
| EOS CCA, and CREDIT ACCEPTANCE | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION REGARDING
THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND ORDER ON
PLAINTIFF'S MOTIONS TO STRIKE
(Dkt. Nos. 54, 57 & 105)

ROBERTSON, U.S.M.J.

On March 28, 2014, plaintiff Alexis Karle ("Plaintiff") filed this action against

defendants Southwest Credit Systems; EOS CCA; Deca Financial Services, LLC; Northeast

Utilities Service Company ("Northeast"); and Credit Acceptance Corporation ("Credit

Acceptance").  Southwest Credit Systems and EOS CCA are no longer parties to this litigation,

and Deca Financial Services, LLC has not filed an appearance in this case.  Plaintiff asserts

various claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), the Fair

Debt Collections Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and the Telephone

Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), as well as related state law claims

against Northeast and Credit Acceptance (collectively, "Defendants").  She alleges that

Northeast unlawfully obtained her credit report and that Credit Acceptance repeatedly called her

at inconvenient times and in an improper manner.

Northeast and Credit Acceptance have each moved for summary judgment (Dkt. Nos. 54, 57). Plaintiff, who is self-represented, filed an opposition to each motion (Dkt. Nos. 63, 64) and, subsequently, with leave of court, filed a further opposition, which included her cross-motion for summary judgment and two motions to strike (Dkt. No. 105). The parties' cross-motions for summary judgment were referred to this court for report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). A hearing on the instant motions was held before the undersigned on April 29, 2015. For the reasons stated below, the court recommends that Defendants' motions for summary judgment be granted, and Plaintiff's cross-motion for summary judgment be denied and denies Plaintiff's motions to strike.

I.    BACKGROUND

Plaintiff did not file a statement of undisputed facts in compliance with Local Rule 56.1. Accordingly, the facts set forth by Defendants are deemed admitted. *See Gillen v. Corbin*, 839 F. Supp. 2d 376, 381 n.11 (D. Mass. 2011). The record shows that Northeast is a subsidiary of Northeast Utilities, a Connecticut corporation that owns the stock of its subsidiaries, including Northeast (Dkt. No. 55-1, ¶¶ 4-5, 7). Pursuant to a service agreement with Northeast Utilities, Northeast provides administrative, tax, accounting, and legal services to Northeast Utilities' related corporate entities (*id.*, ¶ 5). Western Massachusetts Electric Company ("WMECO") is engaged in the generation, transmission, distribution and sale of electricity to customers in Western Massachusetts (*id.*). Northeast provides customer and credit services to WMECO, including establishing accounts (Dkt. No. 55-2, ¶ 3).

On February 18, 2014, Plaintiff opened an electric service account with WMECO by providing personal information, including her social security number, through an interactive voice response system administered by Northeast (*id.*, ¶ 4; Dkt. No. 105, ¶ 65). In connection

with opening Plaintiff's account, her social security number was provided to an identity

verification service, Experian Connect Check, for verification (*id.*).  Connect Check is a service

provided by Experian that assists utility, telephone, cable and wireless companies to, among

other things, verify the identity of potential customers.[1]  An excerpt of Plaintiff's credit report

shows two requests by "Northeast Utilities SVC" on February 18, 2014 (Dkt. No. 105-1 at 42;

*see also* Dkt. Nos. 64-7; 55-3).[2]  These requests appear under the statement: "These inquires do

not affect your credit score" (Dkt. No. 105-1 at 42).

Credit Acceptance is an indirect auto finance company that works with car dealers

nationwide.[3]  In March 2014, Credit Acceptance placed multiple phone calls to a Western

Massachusetts telephone number it believed belonged to one of its customers (Dkt. No. 59-1, ¶

3).  It is undisputed that, at the time that Credit Acceptance placed these calls, the telephone

number belonged to Plaintiff and not to Credit Acceptance's customer.  Credit Acceptance called

Plaintiff's telephone number in an attempt to collect a debt from its customer (*id.*).  The

customer's account was assigned to Credit Acceptance at origination and was not in default at

the time of assignment (*id.* at ¶ 2).

Plaintiff's telephone number is associated with an internet-based VoIP (voice over

---

[1] *See* Connect Check,
https://www.experian.com/esolutions/esolutions/products/connectcheck.html (last visited on
June 18, 2015).
[2] Experian is also a "consumer reporting agency."  *Chiang v. MBNA*, 634 F. Supp. 2d 164, 167
(D. Mass. 2009).  The excerpted credit report contains the heading "Experian-Investigation
Results" (Dkt. No. 105-1 at 42).  Plaintiff alleges in her amended complaint that she "pulled her
consumer credit reports from the three major credit reporting agencies and found entries by
entities that she was unfamiliar with in the credit reports," including Northeast (Dkt. No. 19, ¶
26).
[3] *See* Credit Acceptance, http://www.creditacceptance.com (last visited June 16, 2015).

internet protocol) home line (Dkt. No. 105, ¶ 8; Dkt No. 105-1 at 2-8; Dkt. No. 59-3 at 34).[4]

According to a Comcast invoice submitted by Plaintiff, she purchased a "bundled" service

package from Comcast and received "Digital Voice Unlimited" for which she was charged a

monthly flat fee of $8.00 (Dkt. No. 52-1 at 12 ("Total XFINITY Bundled Services"); Dkt. No.

64-1, ¶ 3).  The invoice indicates a charge of $8.00 for "D3 Emta Equipment" from "7/21-8/20"

for Plaintiff's telephone number (*id.*).

II.    STANDARD OF REVIEW

On a motion for summary judgment, the court must determine whether "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it would

affect the outcome of the case under the controlling law.  *United States v. One Parcel of Real*

*Prop.* (*New Shoreham, R.I.*), 960 F.2d 200, 204 (1st Cir.1992).  A genuine issue exists as to such

a fact if there is evidence from which a reasonable trier of fact could decide the fact either way.

*Id.*  The non-moving party bears the burden of placing at least one material fact into dispute after

the moving party shows the absence of any disputed material fact.  *Mendes v. Medtronic, Inc.*, 18

F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"In conducting this canvass of the record, we must take the evidence in the light most

flattering to the party opposing summary judgment, indulging all reasonable inferences in that

party's favor."  *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003) (citing *Griggs–*

*Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)).  "This framework is not altered by the

---

[4] VoIP technology allows a person to make voice calls using a broadband Internet connection
instead of a regular (or analog) telephone line.  *See* Voice over Internet Protocol (VoIP), Fed.
Comm. Commission, http://www.fcc.gov/encyclopedia/voice-over-internet-protocol-voip (last
visited June 10, 2015).

presence of cross-motions for summary judgment." *Id.* (citing *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996). A self-represented litigant is not exempt from compliance with procedural rules. *See Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000).

III.    DISCUSSION

    A.  Claims Against Northeast

Plaintiff alleges that on February 18, 2014, Northeast twice "pulled" her credit report from Experian, a third-party consumer reporting agency, without her permission, in violation of the FCRA (Dkt No. 19, ¶¶ 27-28; Dkt. No. 63-1, ¶ 9). Plaintiff's FCRA claim is based on the contention that Northeast had neither her written consent nor any "permissible purpose" recognized by the FCRA when it allegedly obtained her consumer report. Northeast responds that it neither requested nor obtained Plaintiff's credit report from a third-party credit reporting agency (Dkt. No. 55 at 4). Rather, Northeast explains, on February 18, 2014, Plaintiff provided her social security number to Northeast when she opened her electric service account with WMECO, triggering an identity verification process through Experian Connect Check using her social security number (*id.* at 5). Northeast asserts that this identification process does not constitute a request for a "consumer report" under the FCRA, and because Plaintiff cannot demonstrate that Northeast obtained her credit report, she cannot establish any violation of the FCRA (*id.* at 6-7).

The FCRA "regulates access to individuals' 'consumer reports' (commonly known as credit reports)." *Dixon v. Shamrock Fin. Corp.*, 522 F.3d 76, 77-78 (1st Cir. 2008). It imposes obligations on three types of entities: (1) users of consumer reports, (2) consumer credit reporting agencies, and (3) furnishers of information to consumer reporting agencies. *Chiang v. MBNA*, 634 F. Supp. 2d 164, 167 (D. Mass. 2009); *Leet v. Cellco P'ship*, 480 F. Supp. 2d 422,

428 (D. Mass. 2007).  Plaintiff appears to allege that Northeast was a user of her consumer

reports.  "The FCRA imposes civil liability on 'any . . .  user' which is either negligent, 15

U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, in failing to comply with any requirement

imposed under the FCRA."  *Veno v. AT&T Corp.*, 297 F. Supp. 2d 379, 383 (D. Mass. 2003).

Under the FCRA, "[a]n entity may gain access to an individual's consumer report only

with the written consent of the individual, unless the consumer report is to be used for certain

'permissible purposes,' in which case written consent is not required."  *Dixon*, 522 F.3d at 77-78;

*see* 15 U.S.C. § 1681b; *see also* 15 U.S.C. § 1681b(f)(1) ("A person shall not use or obtain a

consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for

which the consumer report is authorized to be furnished under the section; and (2) the purpose is

certified in accordance with section 1681e of this title by a prospective user of the report through

a general or specific certification.").  A "consumer report" is defined in the statute as follows:

> Any written, oral, or other communication of any information by a consumer
> reporting agency bearing on a consumer's *creditworthiness, credit standing,*
> *credit capacity, character, general reputation, personal characteristics, or mode*
> *of living* which is used or expected to be used or collected in whole or in part for
> the purpose of serving as a factor in establishing the consumer's eligibility for (A)
> credit or insurance to be used primarily for personal, family, or household
> purposes; (B) employment purposes; or (C) any other purposes authorized under
> section 1681b of this title.

15 U.S.C. § 1681a(d)(emphasis added).

Here, although the identity verification through Experian was for purposes of establishing

a credit account for household purposes, the record does not show that Northeast obtained any

information as to Plaintiff's "creditworthiness, credit standing, [or] credit capacity" for the

purposes set forth in 15 U.S.C. § 1681a(d).  Rather, Plaintiff's credit report reflects that

Northeast, in the process of providing administrative services to WMECO, verified Plaintiff's

identity via her social security number using Experian Connect Check.  This identity verification

does not constitute a "consumer report" within the meaning of the FCRA.  *See* 15 U.S.C. §

1681a(d).  Indeed, in 2000, the Federal Trade Commission stated that "credit header data," which

includes a person's social security number, "was not subject to the FCRA because it does not

bear on creditworthiness."  *Individual Reference Servs. Grp., Inc. v. F.T.C.*, 145 F. Supp. 2d 6,

17 (D.D.C. 2001) (internal quotation marks omitted).  Furthermore, Plaintiff fails to put forth any

evidence as to liability, where Northeast would have had to act negligently or willfully in

obtaining Plaintiff's credit report.  *See Veno*, 297 F. Supp. 2d at 384-386.  Because no reasonable

trier of fact could conclude on the instant record that Northeast obtained Plaintiff's credit report,

Plaintiff has failed to meet her burden in opposing Northeast's summary judgment motion and in

seeking an entry of judgment on her own behalf.  *See Harper v. Credit Control Servs., Inc.*, 863

F. Supp. 2d 125, 127 (D. Mass. 2012).  Because Northeast has met its burden of demonstrating

that there is no genuine issue of material fact, it is entitled to judgment as a matter of law on this

claim.[5]

　　　To the extent Plaintiff asserts that Northeast violated the FDCPA, which regulates debt-

collection practices, the record is devoid of any evidence that Northeast engaged in any debt-

collection activity.  Similarly, any claim under the Massachusetts Attorney General's Debt

Collection Regulations, 940 CMR 7.00, cannot be sustained against Northeast because the

regulations only apply to debt-collection services or actions.  *See* 940 CMR 7.01 ("The purpose

---

[5] Northeast further argues (1) that even if it had obtained Plaintiff's credit report, it would have had the authority to do so under 15 U.S.C. § 1681b(a)(3)(F)(i) because Plaintiff was initiating a business transaction when she accessed the WMECO website in order to open her WMECO account; and (2) that even if the FCRA's definition of a "consumer report" included the identity verification process used here, the FCRA was not intended to be used as a sword against businesses protecting consumers' identities (Dkt. No. 55 at 7-8).  For purposes of this Report and Recommendation, the court need not address these alternative arguments, as the evidence demonstrates that there is no genuine issue of fact as to whether Northeast obtained Plaintiff's credit report.

of 940 CMR 7.00 is to establish standards, by defining unfair or deceptive acts or practices, for the collection of debts from persons within the Commonwealth of Massachusetts."); 940 CMR 7.02 ("940 CMR 7.00 applies only to the collection of debts, as defined in 940 CMR 7.00, and no conduct which is not the collection of debts or any part thereof is affected.").  Because there is no evidence that Northeast violated the FDCPA or the Massachusetts Attorney General's debt collection regulations, Plaintiff's derivative claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws. Ch. 93A ("Chapter 93A") fails as a matter of law.  *See Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013) ("Because Plaintiff did not establish the existence of a viable TCPA claim, his derivative Chapter 93A claim fails as a matter of law.") (citing *Waters v. Kream*, 770 F. Supp. 2d 434, 437 (D. Mass. 2011) ("The Chapter 93A claims were predicated on the putative violations of the FDCPA. Since there was no underlying violation of the latter, there was no unfair or deceptive act or practice in violation of the former.")).  Plaintiff's claim under Chapter 93A fails for the additional reason that the record does not show that she sent Northeast a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon" no fewer than thirty days prior to filing suit.  Mass. Gen. Laws. Ch. 93A, § 9(3).  Such notice is "a prerequisite to suit."  *Searle v. Convergent Outsourcing, Inc.*, No. 13-11914-PBS, 2014 WL 4471522, at *6 (D. Mass. Jun. 12, 2014).

Finally, the unlawful conduct on which Plaintiff relies as the basis for the FCRA claim, *i.e.*, that Northeast obtained her credit report without her permission or a permissible purpose, is "precisely the kind of conduct that Congress intended to regulate" under 15 U.S.C. § 1681b, and thus, any Chapter 93A claim premised on this conduct is preempted.  *Catanzaro v. Experian Info. Solutions, Inc.*, 671 F. Supp. 2d 256, 261-262 (D. Mass. 2009) (plaintiff's Chapter 93A

claims preempted by the FCRA because the alleged unlawful acts directly related to the responsibilities of those who furnish information to consumer reporting agencies as set forth in 15 U.S.C. § 1681t(b)(1)(F)).  Northeast is thus entitled to summary judgment on these additional claims.

B.      Claims Against Credit Acceptance

        i. Violation of the Fair Debt Collection Protection Act

Plaintiff contends that Credit Acceptance violated the FDCPA when it allegedly called her over ten times in March 2014 without her consent and before 8:00 a.m. (Dkt. No. 63-1, ¶¶ 17-19).  Plaintiff alleges a violation of § 1692c(a)(1) of the FDCPA, which provides as follows:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt – (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.  In the absence of knowledge to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

15 U.S.C. § 1692c(a)(1).

Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added).  The FDCPA further provides that a "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due *another* to the extent such activity . . . concerns a debt which was *not in default at the time it was obtained by such person*."  15 U.S.C. § 1692a(6)(F)(iii) (emphasis added); *see Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6)

indicates conclusively that a debt collector does not include the consumer's creditors . . . or an assignee of a debt, as long as the debt was not in default at the time it was assigned.").

Here, when Credit Acceptance called Plaintiff's telephone number in an attempt to reach its customer, the debt that customer owed was assigned to Credit Acceptance at origination, and at the time of assignment was not in default (Dkt. No. 59-1, ¶ 2).  Plaintiff has not placed these material facts into dispute.  *See Mendes*, 18 F.3d at 15 (non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact).  Thus, at the time of the alleged telephone calls, the debt was owed to Credit Acceptance, not to "another."  *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996) ("Once an installment sales contract has been assigned to Credit Acceptance, in our view, the debt it represents is owed to Credit Acceptance, not to [the car dealer].").  Because the debt was not due to another, 15 U.S.C. § 1692a(6), and, further, because the debt owed was not in default when Credit Acceptance received the assignment, *see Wadlington*, 76 F.3d at 107, for purposes of this case, Credit Acceptance is not a "debt collector" within the meaning of the FDCPA.  Therefore, Plaintiff's claim cannot survive the summary judgment stage.  *See In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001).

ii. Violation of the Telephone Consumer Protection Act

Plaintiff further alleges that these calls by Credit Acceptance were "solicitation calls" to her telephone number without her permission, in violation of the TCPA (Dkt. No. 19, ¶ 45).  She also alleges that these calls were unlawfully made with an automatic telephone dialing system ("ATDS") (*e.g.*, *id.*, ¶ 37; Dkt. No. 63-1, ¶ 18).  It appears that Plaintiff is invoking two separate subsections of the TCPA in making these assertions.  Credit Acceptance responds that Plaintiff has failed to put forth any evidence in support of such claims, thereby requiring that summary

judgment be entered in its favor (Dkt No. 58 at 5-6).

In general, "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) (citing *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012)).  The TCPA sets out four categories of prohibited conduct.  *See* 47 U.S.C. § 227(b)(1)(A)-(D).   Among those, section 227(b)(1)(B) makes it unlawful for any person within the United States

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, *unless the call* is initiated for emergency purposes or *is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B).*

47 U.S.C. § 227(b)(1)(B)(emphasis added).

As set forth above, the Federal Communications Commission ("FCC") has the authority to exempt certain calls from the prohibitions set forth in section 227(b)(1)(B).  Under § 227(b)(2)(B)(ii), the FCC has exempted calls made for commercial purposes that "do not include the transmission of any unsolicited advertisement."  The FCC has also adopted a rule that bars any person or entity from "[i]nitati[ing] any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party," *unless* such call "[i]s made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing."  47 C.F.R. § 64.1200(a)(3).  The FCC has stated that no further exemption was needed for debt-collection calls because "such calls are adequately covered by exemptions [adopted] for commercial calls which do not transmit an unsolicited advertisement."  *In re Rules & Regs. Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8773 § 39 (Oct. 16, 1992); *see, e.g.*, *In re Rules & Regs. Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 561 § 5 (Jan. 4, 2008) ("prerecorded debt collections calls are exempted from

Section 227(b)(1)(B) of the TCPA").  In short, "the FCC, acting pursuant to its authority under

47 U.S.C. § 227(b)(2)(B), has enacted a rule, and has issued several orders, exempting debt-

collection calls from the prohibition stated in § 227(b)(1)(B)."  *Doucette v. GE Capital Retail*

*Bank*, No. 14-cv-012-LM, 2014 WL 4955675, at *3 (D.N.H. Oct. 2, 2014).  Because the record

demonstrates that Credit Acceptance made debt-collection calls to Plaintiff's telephone number,

her claim under section 227(b)(1)(B) fails as a matter of law.  *See Meadows v. Franklin*

*Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (granting debt collector's motion

for summary judgment and holding that "prerecorded debt-collection calls are exempt from the

TCPA's prohibitions on such calls to residences"); *Doucette*, 2014 WL 4955675, at *3

("Because the Doucettes' TCPA claim is based upon the debt-collection calls they received from

NCO, they have failed to state a claim for relief that is plausible on its face.").

Plaintiff's other potential claim falls under section 227(b)(1)(A) of the TCPA, which

prohibits any person from making "any call (other than a call made . . . with prior express

consent of the called party) using any automatic telephone dialing system ["ATDS"] or an

artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone

service . . . or any service for which the called party is charged for the call."  47 U.S.C. §

227(b)(1)(A)(iii).  The TCPA defines ATDS as equipment that has the capacity "to store or

produce telephone numbers to be called, using a random or sequential number generator" and the

ability "to dial such numbers."  47 U.S.C. § 227(a)(1); *see also Jones*, 978 F. Supp. 2d at 86 n.9

(FCC defines ATDS as equipment that "dials a list of numbers (such as a business's list of

customers), rather than [ ] random or sequential numbers . . . because the basic function of such

dialing equipment is the same – the capacity to dial numbers without human intervention")

(internal quotation marks omitted)).  The elements of this type of TCPA claim are: (1) the

defendant called a cellular telephone service or a service for which the called party is charged on a per call basis; (2) using an ATDS; and (3) without the recipient's prior consent. *See Jones*, 978 F. Supp. 2d at 86.

In her declaration, Robin Larrair, Credit Acceptance's Front End Collections Manager, states, "[n]o pre-recorded voice messages were left" for Plaintiff's telephone number," and "Credit Acceptance does not use any equipment that utilizes a 'random or sequential number generator'" (Dkt. No. 110-1, ¶¶ 4, 6). Plaintiff points to no evidence calling those statements into question. *See* Fed. R. Civ. P. 56(c)(1)(A),(B). Thus, there is no *genuine* dispute regarding whether Credit Acceptance used an ATDS. *See Jones*, 978 F. Supp. 2d at 87 ("Simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim."). Because Plaintiff fails to meet her burden with respect to this element necessary to her section 227(b)(1)(A)(iii) claim, Credit Acceptance is entitled to summary judgment.

Even if there was a genuine issue as to whether Credit Acceptance used an ATDS, Plaintiff's claim under section 227(b)(1)(A)(iii) would fail because Plaintiff has not shown there is a question of material fact as to whether (1) Credit Acceptance called her cell phone, and (2) whether she was "charged for [Credit Acceptance's] call[s]." 47 U.S.C. § 227(b)(1)(A)(iii). The evidence demonstrates that the calls were made to a telephone number assigned to a Comcast VoIP home telephone line, not a cell phone (Dkt. No. 52-1 at 12). Although Plaintiff has alleged that Credit Acceptance called her "wireless" or "cell" phone (*e.g.*, Dkt. No. 19, ¶¶ 36-37, 43; Dkt. No. 64-1, ¶ 3), she responded to Credit Acceptance's "interrogatory no. 23," which asked Plaintiff to "[s]tate all facts and IDENTIFY all witnesses and documents supporting YOUR contention that 413-363-XXXX is a phone number assigned to a cell phone service," that she "never stated it was assigned to a cell phone" (Dkt. No. 59-3 at 34). "First Circuit precedent

states, "[w]hen an interested witness[, in this case, Plaintiff,] has given clear answers to unambiguous questions, [s]he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Malave-Tores v. Cusido*, 919 F. Supp. 2d 198, 203 (D.P.R. 2013) (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994)).  The evidence further demonstrates that Plaintiff purchased her telephone service as part of a "bundled" package through which she received "Digital Voice Unlimited" and was charged a flat monthly fee of $8.00 (Dkt. No. 52-1 at 12 ("Total XFINITY Bundled Services")).  There is no indication of any charge per usage (*id.*).  Nor has Plaintiff submitted any evidence in support of any itemized charges.  *Cf. Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 617-618, 624-625 (2013) (stating that the plaintiff's TCPA claims were within the statute's "call charged" provision because the plaintiff "submitted evidence he was charged for *each* of the calls initiated" by the defendant, and the parties stipulated that an ATDS was used) (emphasis added)).  Since there is no *genuine* dispute that Plaintiff was not charged on a per call basis for Credit Acceptance's calls, Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii) cannot succeed, and Credit Acceptance is entitled to summary judgment on both of Plaintiff's claims under the TCPA.

Finally, during the April 29, 2015 hearing on the parties' summary judgment motions, Plaintiff stated that she was not asserting any claims against Credit Acceptance under the FCRA. To the extent any of Plaintiff's filings can be construed as asserting that Credit Acceptance violated the FCRA, she has voluntarily withdrawn any such claim.

C. Plaintiff's Motions to Strike

Plaintiff asks the court to strike both the affidavit of Richard J. Morrison filed by

Northeast (Dkt. No. 55-1) and the declaration of Robin Larrair filed by Credit Acceptance (Dkt.

No. 59-1). Plaintiff argues that no exhibits or documents were attached to support the statements

made in these affidavits.

Pursuant to Federal Rule of Civil Procedure 56(c)(4),"[a]n affidavit or declaration used to

support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the

matters stated."  There is no requirement that exhibits or documents be attached to support

statements made in affidavits or declarations.  Here, both Mr. Morrison's affidavit and Ms.

Larrair's declaration satisfy the requirements of Federal Rule 56(c)(4).  Accordingly, Plaintiff's

motions to strike will be denied.

IV.    CONCLUSION

For the reasons stated, it is this court's RECOMMENDATION that Northeast Utilities

Service Company's Motion for Summary Judgment be GRANTED, Credit Acceptance's Motion

for Summary Judgment be GRANTED, and Plaintiff's Cross-Motion for Summary Judgment be

DENIED.[6]  It is further ORDERED that Plaintiff's Motions to Strike are DENIED.

---

[6] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P.
59(b), any party who objects to these findings and recommendations must file a written objection
with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and
Recommendation.  The written objection must specifically identify the portion of the proposed
findings or recommendations to which objection is made and the basis for such objection.  The
parties are further advised that failure to comply with this rule shall preclude further appellate
review by the Court of Appeals of the District Court order entered pursuant to this Report and
Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.
1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702
F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park
Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*,
474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen
(14) days after being served with a copy thereof.

                                                    /s/ Katherine A. Robertson____
                                                    KATHERINE A. ROBERTSON
DATED: June 22, 2015                                United States Magistrate Judge